## 49216. SEARS, ROEBUCK & COMPANY v. REID.

Eberhardt, Presiding Judge.

Prince Reid brought suit against Sears, Roebuck &

Company seeking to recover for injuries he received when he slipped and fell on a wet spot while entering Sears store in Albany. The case was tried before a jury, resulting in a verdict for plaintiff.

The evidence reveals that plaintiff, who had been a frequent visitor to Sears and was familiar with the premises, had been shopping downtown in Albany on the morning of the occurrence. He testified that "it was a blowing rain before I got there, but it was drizzling when I got there [to Sears]." He stated that he knew that people walking up and down the street that morning got rain on their clothing, raincoats, and shoes, and that when they entered Sears' door the rain blew in. He knew that his shoes were wet and needed no sign to caution him to this effect. He entered the store through double doors and proceeded across a 5′ x 10′ non-skid rubber mat recessed so as to be level with the floor, and as he stepped from the mat to the main floor surface both feet went out from under him and he landed on his buttocks. His back and arms were wet from the fall, and there was a puddle of water on the floor. When Reid entered the store he saw that the mat was wet, but because of people going in and out he did not see the water on the floor until just as he fell.

A saleslady for Sears testified that she saw plaintiff fall; that he "slid and set down," and that the floor "was damp" but that she saw no puddle of water to be mopped up.

Sears appeals with nine enumerations of error complaining, inter alia, of the denial of its motions for directed verdict made at the conclusion of plaintiff's evidence and at the conclusion of all the evidence, and of the denial of its motion for judgment n.o.v. *Held:*

The evidence, construed in a light most favorable to plaintiff, is wholly insufficient to support a finding of negligence attributable to Sears. There is no evidence of improper construction of the floor or that it was inherently dangerous. The record is silent as to methods, materials, and time of cleaning, waxing or polishing the floor. There is no evidence that it was naturally slick or rendered so by any acts of Sears. Assuming that plaintiff did not slip because of his own wet shoes, the most that

can be said is that his fall was caused by the presence of rainwater on the floor blown in by the wind or tracked in by others. However, there is no evidence that Sears had actual knowledge of it, nor is there any evidence as to how long the floor may have been wet.

"The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted." 20 RCL 56, § 52. Under this record the condition of the weather affords the only basis upon which Sears could be charged with constructive knowledge of the wet floor. However, it is clear that Sears' knowledge in this respect was not superior to that of plaintiff, and no sufficient basis for recovery appears under the evidence adduced here. " 'This court has held . . . that a business proprietor cannot reasonably be expected to prevent the presence of some water on a normal floor during a period of time when it is continually raining. *Gibson v. Consolidated Credit Corp.,* 110 Ga. App. 170 (2c) (138 SE2d 77); *Card v. Chichester's Baconfield Pharmacy,* 111 Ga. App. 358 (141 SE2d 790); *Angel v. Varsity, Inc.,* 113 Ga. App. 507 (148 SE2d 451).' *Bryant v. Rucker,* 121 Ga. App. 395, 396 (173 SE2d 875)." *Holtzclaw v. Lindsay,* 122 Ga. App. 703, 704 (178 SE2d 561). Accord: *Hill v. Davison-Paxon Co.,* 80 Ga. App. 840 (57 SE2d 680); *Conaway v. McCrory Stores Corp.,* 82 Ga. App. 97 (60 SE2d 631); *Stanton v. Grubb,* 114 Ga. App. 350, 351 (2) (151 SE2d 237); *Winters v. Morrison's Cafeteria,* 121 Ga. App. 98 (172 SE2d 878). Cf. *Roberts v. Bradley,* 114 Ga. App. 262 (150 SE2d 720); *Auerbach v. Padgett,* 122 Ga. App. 79 (176 SE2d 193).

This is not a situation for application of the doctrine of res ipsa loquitur, for it is just as reasonable to conclude that the plaintiff fell because of the condition of his shoes or because of something on them, as it would be to conclude that it may have resulted from some dereliction of duty by Sears in keeping its floor in a reasonably safe condition, of which there is no proof. See and compare *Miller v. Gerber Products Co.,* 207 Ga. 385, 387 (62 SE2d 174).

The denials of Sears' motions for directed verdict and for judgment n.o.v. are reversed with direction that final judgment be entered in its favor. Code Ann. § 81A-150.

*Judgments reversed with direction. Bell, C. J., Pannell, P. J., Deen, Quillian, Clark and Stolz, JJ., concur. Evans, J., dissents. Webb, J., disqualified.*

ARGUED APRIL 4, 1974 — DECIDED MAY 20, 1974 — REHEARING DENIED JUNE 17, 1974.

*Perry, Walters, Lippitt & Custer, Henry C. Custer,* for appellant.

*D. C. Campbell, Jr., Thad Gibson,* for appellee.

EVANS, Judge, dissenting.

The majority opinion sets aside plaintiff's verdict and judgment, and holds that defendant's motion for directed verdict should have been granted, and orders that judgment be entered for defendant in the lower court. I respectfully dissent.

Plaintiff entered the store of Sears, Roebuck & Company in Albany, Ga., through double doors, and immediately inside he stepped upon a rubber mat ten feet wide, which was set into a 1/2 inch recess in the floor, the top surface being level with the floor. It was crowded because people were rushing into and out of the store at the entrance. When plaintiff stepped off the mat and onto the floor surface both of his feet slipped from under him, causing him to fall to the floor. It had been raining, and when plaintiff fell and got up he discovered his back and arms were wet, and there was a puddle of water on the floor near the place where he fell.

Let us pause at this point. Both the defendant and the majority opinion contend that the cause of plaintiff's fall was *water upon or dampness of the floor,* which water had been tracked inside by customers.

But the undisputed evidence in this case does not support that contention. There is an issue of fact for determination by a jury as to what actually caused plaintiff to fall, albeit no witness testified the dampness

caused the floor to be slippery. The fall could have been caused by any one of three factors, to wit: 1. The maintenance of a slippery floor by defendant. 2. Defendant's allowing the floor to become damp and wet during the rain, tracked in by customers, to the extent that water had formed a puddle, and thus caused the surface of the floor to be slippery. 3. The maintenance of a slippery floor in such condition that dampness and water would enhance its slippery qualities.

Although the evidence showed without dispute that defendant employed five men, whose duties were to maintain the floors in safe condition, nothing whatever had been done since the rain began on that morning to keep the floors safe. Neither the entrance-way nor floors had been mopped *one single time* after the rain began to fall.

Plaintiff was instructed by defendant to report his injury to personnel, which he did—and afterwards, while leaving the store, at the place where he fell, he saw an employee mopping the damp floor and the accumulated puddles of water.

Plaintiff does not predicate his case on dampness of the floors as the cause of his fall. He bases his case on the contention that his injuries were caused by *"the negligent maintenance of the floor surface in defendant's store."* (Par. 4 of Complaint, Record 3.) If the floor was negligently maintained so that its slippery surface caused plaintiff's fall, he is entitled to recover. No duty whatever rested upon plaintiff to show what caused the surface to be slippery. That was a matter of defense.

It is respectfully asserted that the following principles show that the issues in this case were properly presented to a jury for determination.

1. Directed verdicts are not favored; if there is any issue of fact, it should be decided by the jury; all of the evidence, including all favorable inferences, must be construed most favorably toward the party against whom a verdict has been directed. *Curry v. Roberson,* 87 Ga. App. 785 (75 SE2d 282); *Birchmore v. Upchurch,* 78 Ga. App. 233, 234 (50 SE2d 857); *Jones v. Mayor &c. of Athens,* 105 Ga. App. 86 (1) (123 SE2d 420). A directed verdict is proper only when the evidence demands the verdict and

no other verdict could be legally found. *Whitlock v. Michael,* 208 Ga. 229 (65 SE2d 797).

2. Questions of negligence are peculiarly for determination, not by the judge, but by a jury. *Long Const. Co. v. Ryals,* 102 Ga. App. 66 (1) (115 SE2d 726); *Malcom v. Malcolm,* 112 Ga. App. 151, 153 (144 SE2d 188); *Chastain v. Atlanta Gas Light Co.,* 122 Ga. App. 90 (2) (176 SE2d 487); *Boggs v. Griffeth Bros. Tire Co.,* 125 Ga. App. 304 (2) (187 SE2d 915).

3. It was not necessary for plaintiff to show what caused the floor to be slippery; the floor was under the control of defendant, and the defendant knew better than anyone else what caused his floor to be slippery. *Bittick & Mays v. Ga. Fla. & Ala. R. Co.,* 136 Ga. 138, at 140 (70 SE 1106); *Southern R. Co. v. Lunsford,* 50 Ga. App. 829, 830 (3), and at 833 (179 SE 571); *Wood v. Hub Motor Co.,* 110 Ga. App. 101, at 104-110 (137 SE2d 674).

4. As to patrons in a store, the owner owes to the customer the duty to keep the premises safe. Code § 105-401.

5. As to the duty to keep the premises safe, the word "safe" is an absolute term; it does not mean "reasonably safe." *Martin v. Henson,* 95 Ga. App. 715 (99 SE2d 251).

6. As to knowledge by owner of the unsafe condition, the floors were under the owner's absolute control, and *in this case the floors were slippery;* and there is no proof in the record that *the water or dampness made them slippery.* When plaintiff testified that his feet went from under him as he stepped off the rubber mat and onto the floor, this was sufficient for the jury to conclude that the floors were slippery. *The defendant seems to have assumed the damp or wet condition caused the floors to be slippery. But there is no such proof in the record.* And let it be again emphasized that plaintiff had no duty whatever to prove what caused the floors to be slippery; this being a matter of defense for defendant. And let it also be noted that defendant did not contend nor offer any evidence to show *that the floors were not slippery.* In this case, the fact is undisputed that the floors were so slippery as to cause plaintiff to fall.

7. Let it be repeated that this record does not show that excess water or dampness caused the floor to be

slippery. The defendant just seems to have assumed that it did so, whereas he has the burden of showing that it did so before he could rely upon that theory as a defense. But, assuming arguendo, that the dampness of the floors caused them to be slippery, the owner had knowledge that it was raining and common knowledge told him that during a rainy day water would be tracked into the store. *Gibson v. Consolidated Credit Corp.*, 110 Ga. App. 170 (2b) (138 SE2d 77).

8. It has been held several times that the owner of the premises has no duty to *"continuously mop";* that he has no duty to *"stay the elements or continuously mop";* that he has no duty to *"keep a large force of moppers to mop up as fast as the rain blows in." Gibson v. Consolidated Credit Corp.*, 110 Ga. App. 170 (2c), supra, and at 174 and 176. What is meant by the foregoing expressions? The words "continuously mop," and "large force of moppers" are as to the continuity and quantity of mopping, *nevertheless there is implicit in such language the duty that some mopping should be done.* Here, there were five men maintained by defendant to keep the floors safe, *and not one of them mopped one single time* at or near the place where plaintiff fell, even though they knew it was raining; knew that water was being tracked in; could have seen the puddle of water; and that was their exclusive function as employees of the defendant corporation. *But after plaintiff fell the defendant decided now was the time to mop and one man was sent there to mop up the water and dampness on the floor.* What the other four employees (whose duty it was to keep the floor safe) occupied themselves with during this period, the "record sayeth not." Why did defendant's employee mop *after the plaintiff fell,* and not before he fell? What could a jury conclude from such proof?

9. Even if the owner did not have actual knowledge of the dampness, or of the puddle of water, actual knowledge is not necessary. As we have previously pointed out, common knowledge told him that water was being tracked inside during the time it was raining, and constructive knowledge is sufficient to charge the defendant with liability. *Carpet Shop, Inc. v. Powell,* 119 Ga. App. 499, 502 (1) (167 SE2d 718).

10. As to the owner's liability where a customer falls inside his establishment, the true issue is whether the defendant in the exercise of ordinary care should have comprehended the danger in the condition causing the plaintiff's injury, which must be decided by a jury. *Nathan v. Oakland Park Supermarket, Inc.,* 126 Ga. App. 538, 539 (191 SE2d 327); *Home Federal &c. Assn. v. Hulsey,* 106 Ga. App. 171 (126 SE2d 541).

11. And the foregoing (in Division 10 above) applies with equal force to a situation when the floor was slippery irrespective of the dampness; and to a situation when the dampness caused the floor to be slippery. If the owner, who was in actual control of the floors and ought to have known all about them, by exercising ordinary care could have comprehended the danger in the condition which caused plaintiff's injuries, the defendant-owner is liable.

12. As to plaintiff's duty to avoid injury, of course, it is always a question for a jury to determine whether he could have discovered the condition by proper inspection, and whether or not plaintiff had knowledge of the danger. *Townley v. Rich's, Inc.,* 84 Ga. App. 772, 776, 777 (67 SE2d 403).